UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY BRENNAN, | Civil No. 20-2085 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| NORTHERN STATES POWER COMPANY, *d/b/a* XCEL ENERGY, | |
| Defendant. | |

John Allan Abress, **FRANZ HULTGREN EVENSON, PA**, 1011 Second Street North, P.O. Box 307, St. Cloud, MN 56302; and Sarah R. Jewell, **RIVER VALLEY LAW PA**, 183 Seventh Avenue South, Waite Park, MN 56387 for plaintiff;

Andrew J. Holly, Brian Moen, and Stephen P. Lucke, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Minneapolis, MN 55402, for defendant.

Plaintiff Mary Brennan brought this Employee Retirement Income Security Act ("ERISA") action against her employer, Northern States Power Company ("NSP"), a Minnesota corporation doing business under the assumed name of Xcel Energy ("Xcel"). Brennan asserts one count to recover pension plan benefits and to clarify her rights under the plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). Brennan alleges that Xcel has improperly calculated her retirement and pension benefits by refusing to credit the time she worked for the Nuclear Management Company ("NMC"), an affiliate organization that was later absorbed by Xcel. Because Brennan's Xcel Pension Plan explicitly prohibits crediting the

time that she worked for NMC and she received separate NMC benefits, Brennan has not met her burden of demonstrating that she is entitled to the benefits she seeks. As a result, the Court will grant Defendant's Motion to Dismiss.

## BACKGROUND

### I. FACTUAL BACKGROUND

From October 29, 1984 until January 31, 2000, Plaintiff Mary Brennan was a full-time employee of NSP, the predecessor of Xcel. (Compl. ¶ 10, Sept. 30, 2020, Docket No. 1.) According to the Complaint, NSP and Xcel merged in 2000, and at that time Brennan became an employee of NMC, a subsidiary or affiliate of Xcel. (*Id*. ¶¶ 11, 15.) Brennan and other employees transitioning from NSP to NMC were given the option of remaining on the NSP Pension Plan,[1] or participating in a defined contribution retirement plan provided by NMC (the "NMC Plan"). (*Id.* ¶¶ 11–14.) Those who elected to leave the NSP/Xcel Plan and join the NMC Plan were able to take their already-accrued NSP/Xcel benefits as a lump sum payment, roll existing retirement funds into an IRA or 401(k) plan, or receive an annuity that paid accrued benefits over time. (*Id.* ¶¶ 12–13.)

The Pension Election Form that Brennan received when she became a NMC employee gave pension plan participants a clear choice between continuing to participate in the parent NSP/Xcel Plan or to terminate their participation in the parent plan and

---

[1] The NSP Plan ultimately became the Xcel Pension Plan, (*see* Decl. Deborah A. Robin ("Robin Decl.") ¶ 5, Ex. C ("Final Denial") at 228, Dec. 15, 2020, Docket No. 11-1), so the Court will refer to it as the "NSP/Xcel Plan."

instead join the NMC Plan. (Decl. Deborah A. Robin ("Robin Decl.") ¶ 5, Ex. C ("Final Denial") at 230, Dec. 15, 2020, Docket No. 11-1.)[2] On November 16, 2000, Brennan signed the Pension Election Form and checked the box that stated:

> I elect to stop participation in my current, parent utility pension plan, and to elect participation in the NMC Money Purchase Pension Plan, as of [February 1, 2021]. I understand that any distribution from my current, parent utility pension plan will require a separate election under the terms of that plan. I understand that I will participate in the NMC Money Purchase Pension Plan, that I will be immediately vested in my benefit under the plan, and that I will receive investment election information later.

(*Id*.) The other option—to continue participation in the parent NSP/Xcel Plan—which Brennan did not check, specifically stated, "I understand that I will only be covered by the provisions of my current plan, but that I will continue to accrue credits and vesting service in that plan based on my rate of pay and years of services with the NMC." (*Id.*) The box that Brennan checked does not state that years of service with NMC will be credited toward non-NMC benefits.

Nearly all the new NMC employees elected to either remain in the NSP/Xcel Plan or take the lump sum payment; Brennan is the only employee to join the NMC Plan and

---

[2] Although Brennan does not append the Xcel Plan terms, Adverse Benefit Determination, or the Final Denial to her Complaint, the Court finds that these documents are necessarily embraced by the Complaint because Brennan states a claim for benefits pursuant to the terms of the Xcel Plan and alleges that Xcel's adverse benefit determination and final denial violated her rights under ERISA. These documents are therefore properly considered in the Court's 12(b)(6) analysis. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020). The full administrative record is also appended to the Final Denial, but the Court will only consider those portions of the record that are embraced by the Complaint, including Brennan's Pension Election Form.

receive the accrued benefits from her NSP/Xcel Plan as an annuity.  (Compl. ¶¶ 12–13.) Brennan received her accrued NSP benefits in the form of monthly payments totaling $32,162.67, distributed over a period of 81 months, beginning on February 1, 2001. (Robin Decl. ¶ 4, Ex. B ("Adverse Benefit Determination") at 204, Dec. 15, 2020, Docket No. 11-1.)

From February 1, 2001 to December 31, 2007, Brennan was a full-time NMC employee and a participant in the NMC Plan.  (Compl. ¶ 15.)  Then, in September 2007, NMC became a wholly owned subsidiary of Xcel, and Brennan enrolled in the Xcel Pension Plan ("Xcel Plan") in January 2008.  (*Id*. ¶¶ 16–17.)  At that time, Xcel suspended Brennan's monthly annuity payments from the dispersal of her original NSP benefits, in accordance with the Xcel Plan terms.[3]  (*Id.* ¶ 16.)  The Xcel Plan is administered by a Committee of Xcel employees (the "Committee") who are appointed by Xcel's Board of Directors. (Robin Decl. ¶ 3, Ex. A ("Xcel Plan") at § 12.2, Dec. 15, 2020, Docket No. 11-1.)  Under the terms of the Plan, the Committee has the sole discretion, authority, and responsibility to interpret and construe the Plan, and to determine all factual and legal questions under the Plan, including participants' entitlements to benefits and the amounts of participants' benefits.  (Xcel Plan § 11.1).

---

[3] Section 3.6.1(b) of the Xcel Plan provides that a former Participant who has not attained age 70-1/2, who is reemployed while receiving benefit payments (other than disability benefits) from the Plan and who is scheduled to work for more than 1,000 hours per year will have their payments suspended until the subsequent termination of their employment. (Robin Decl. ¶ 3, Ex. A ("Xcel Plan") at § 3.6, Dec. 15, 2020, Docket No. 11-1.)

From January 1, 2008 to the present, Brennan has been a full-time employee of Xcel. (Compl. ¶ 17.) Brennan alleges that during each transition from NSP to NMC, and then NMC to Xcel, she remained a participant in the pension plans offered by "each version of NSP." (*Id.*) Brennan states that she sought clarification from Xcel about her pension fund benefits at various points over the years, and that she requested and received an estimated benefit payment from Xcel as the pension fund administrator. (*Id.* ¶ 18.) Brennan disputed the calculations and assumptions used in determining her future benefits under the Xcel Plan, and in 2019, she initiated an administrative claim for benefits. (*Id.* ¶¶ 18–19; Adverse Benefit Determination at 203.)

On December 13, 2019, the Committee issued a Notice of Adverse Benefit Determination, in which the Committee rejected Brennan's request to credit her NMC service in calculating her benefits under the Xcel Plan. (Compl. ¶ 19; Adverse Benefit Determination at 203.) The determination made clear that, although Brennan's prior service with NSP/Xcel and NMC would be used to determine Brennan's vesting service,[4] other components of Brennan's benefits—including basic pension equity, Retirement Spending Account, and Social Security Supplement benefits—could only be calculated based on her service with Xcel from January 1, 2008 to the present and could not include

---

[4] The Xcel Plan defines vesting service as "each computation period in which the Employee is credited with 1,000 or more Hours of Service[.]" (Xcel Plan § 2.1.8.) A computation period is the 12 consecutive month periods beginning on the date an employee first becomes a Plan participant, and a participant completes a year of Vesting Service as of the date in the computation period that they complete 1,000 hours of service. (*Id.*)

her NMC service.  (Adverse Benefit Determination at 205.)   The determination also clarified that, under the terms of the Xcel Plan, Brennan did not have the option to repay the annuity payments she had already received in exchange for service credit.  (*Id.* at 204.)  Brennan appealed in writing in February 2020.  (Compl. ¶ 20.)

On or about June 2020, Xcel affirmed the adverse benefit determination, noted that Brennan had exhausted all available administrative remedies under the Plan, and informed Brennan of her right to bring a civil ERISA action.  (*Id.* ¶ 21; Final Denial at 229.)  The Committee reviewed 20 exhibits,[5] including Brennan's Pension Election Form.  (Final Denial at 227–28.)  The Committee also relied on the express terms of the Xcel Pension Plan, which state:

> Under no circumstances shall any Participant be entitled to pay, service, or any other credit toward benefit accruals or toward any criteria that determine the rate of benefit accruals under this Plan, for any period of service during which the Participant is entitled to pay, service or any other credit under any pension plan maintained by NMC.

(Xcel Plan § 13.6.; Final Denial at 228.)

The Committee analyzed Brennan's benefits entitlements in three components: the first commenced with her initial employment at NSP and concluded when she left the

---

[5] These exhibits are all attached to the final determination letter and appended to the pleading, and include correspondence between Brennan and Xcel benefits representatives, an actuarial report commissioned by Brennan, letters and exhibits from Brennan's attorney, correspondence with and reports from Xcel's consulting actuaries, and various pension estimates, among other documents.  (Final Denial at 226–367.)

6

NSP Plan in 2000, which the Committee referred to as Brennan's "Part A benefit"; the second comprised her years as a participant in the NMC Plan, for which she received an "NMC benefit"; and finally, her service with Xcel after the NMC merger, for which she would receive a "Part B benefit" under the Xcel Plan. (Final Denial at 228). The Committee concluded that Brennan had already received credit and annuity payments for her Part A benefit and reiterated that the Xcel Plan did not allow her to repay the accrued benefits she had received as annuities. (*Id.*) The Committee also determined that Brennan had already received full credit for her NMC service under the NMC Plan, and that to count this service toward her "Part B" Xcel service would both violate the clear terms of the Xcel Plan and provide Brennan with an unwarranted double benefit. (*Id.* at 228–29.) The Committee therefore upheld the original determination. (*Id*.)

## II.   PROCEDURAL BACKGROUND

Brennan filed a Complaint in September 2020, alleging one cause of action to recover Pension Benefit Plan benefits and to clarify her rights under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 22–27.) Brennan requests a judgment requiring Xcel to pay Brennan all benefits due under the Xcel Plan and clarifying that Brennan has fulfilled all terms and conditions of the Xcel Plan for receipt of benefits and is entitled to continue to receive benefits as an Xcel employee. (*Id.* at 5–6.)

7

Xcel filed a Motion to Dismiss, pursuant to Rule 12(b)(6), or, in the alternative, a Motion for Summary Judgment.  (Mot. Dismiss, Dec. 15, 2020, Docket No. 8.)  Brennan opposes the Motion.

**DISCUSSION**

**I.     STANDARD OF REVIEW**

**A.     Motion to Dismiss**[6]

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and in the light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual

---

[6] Xcel moves for dismissal pursuant to Rule 12(b)(6), or in the alternative, for summary judgment. Because the Court finds that dismissal is warranted, and that certain documents—including the Xcel Pension Plan, Brennan's Benefit Election Form, and the Xcel Committee's adverse determinations—are necessarily embraced by the Complaint and may be reviewed on a motion to dismiss, it will not address Xcel's arguments for summary judgment.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. ANALYSIS

Brennan alleges that Xcel has improperly calculated her retirement and pension benefits because it has not credited her NMC service, and that she is entitled to recover those pension plan benefits. Under section 502(a)(1)(B) of ERISA, a participant or beneficiary of a covered benefits plan may, after exhausting administrative remedies, bring a civil action to recover benefits due to her, enforce her rights, or clarify her rights to future benefits, pursuant to the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). ERISA's civil provisions provide the exclusive remedy for participants seeking to enforce their rights under the statute. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Thus, to state a claim under this section, Brennan carries the burden to demonstrate that she is entitled to the requested benefits under the terms of the Xcel Plan. *See Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992). Brennan alleges that she has fulfilled all conditions for receipt of benefits under the Xcel Plan and that the Committee's adverse benefit determination is contrary to the terms of the Plan and contrary to the evidence. However, these allegations are undermined by the plain text of the Plan itself.

The Xcel Plan is clear that Brennan is not entitled to "pay, service, or any other credit toward benefit accruals or toward any criteria that determine the rate of benefit accruals under this Plan," for the period of service during which she received pay, service,

9

and credit under the "pension plan maintained by NMC." (Xcel Plan § 13.6.) Brennan does not contest the validity of the Pension Election Form that she signed, and does not dispute that she was a participant in the NMC Plan. Brennan also does not appear to argue that there is any legal defect in the Xcel Plan generally, or the language of § 13.6 specifically. Based on the terms of the Xcel Plan, the Court cannot conclude that Brennan is entitled to the benefit she seeks—credits for her time as employee of NMC during which she was a beneficiary of the NMC Plan. Therefore, the Court finds that Brennan has failed to state a claim for relief.

Brennan also alleges that Xcel made unsupported factual conclusions and misconstrued or misinterpreted the terms of the Plan. However, Brennan does not specify which of the Committee's factual conclusions were unsupported or how the Committee misconstrued the terms of the Xcel Plan. Brennan's allegations are merely conclusory, and she has not pleaded sufficient factual content to permit a reasonable inference that Xcel's adverse determination violates ERISA. *See Iqbal*, 556 U.S. at 678.

Brennan further asserts that the adverse benefit determination was influenced by Xcel's conflict of interest as both payor and administrator of the Plan. Brennan is correct that a conflict of interest is presumed to exist when a plan administrator both evaluates and pays benefits claims. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112–15 (2008). However, it is permissible under ERISA for an entity to act in these dual roles and the existence of such a conflict does not "strip a plan administrator of deference[.]" *Conkright*

*v. Frommert*, 559 U.S. 506, 513 (2010). Rather, a conflict of interest is but one factor that the Court weighs in determining whether an administrator has abused its discretion. *Glenn*, 554 U.S. at 115. Accordingly, unless Brennan states an otherwise viable claim for relief, the mere existence of a conflict of interest will not suffice to allege an ERISA violation.[7]

The Complaint illustrates that, at the time that she elected to join the NMC Plan and receive her accrued NSP benefits in the form of monthly annuities, Brennan was unaware of the long-term consequences of this decision. Further, Brennan could not have known when she elected to join the NMC Plan that NMC would years later be acquired by Xcel and her pension plan would change again. Yet, Brennan had the option to remain on the NSP/Xcel Plan or transfer to the NMC Plan. The Pension Election Form that Brennan signed explicitly stated that remaining on the NSP/Xcel Plan would allow Brennan to credit her service at NMC toward her ultimate pension benefits. Nevertheless, Brennan elected to leave the NSP/Xcel Plan and join the NMC Plan. The Xcel Plan does not permit the crediting of Brennan's NMC service because she has already received a benefit for that

---

[7] Brennan alleges that Xcel's conflict is evidenced by the Committee's refusal to consider and calculate Brennan's time working for NMC, its purported failure to account for the fact that Brennan chose an annuity rather than a lump sum distribution of her NSP benefits, and its refusal to weigh the independent actuarial report Brennan submitted equally with the analyses of its own actuarial consultants. However, these factors have no legal or practical effect given the clear prohibition on crediting NMC time in the Xcel Plan. Brennan does not allege that the actuarial assumptions and methods used by the Plan's consultants were unreasonable in the aggregate or that the Plan actuary made a significant error in applying these assumptions or methods, only that the Committee weighed its own actuarial analyses more heavily the independent report, which does not amount to a colorable claim under ERISA. *See* 29 U.S.C. § 1401(a)(3)(B).

service under the NMC Plan. Even drawing all inferences and construing all facts in Brennan's favor, as the Court must do on a motion to dismiss, the facts presented cannot support a claim.

## CONCLUSION

The Court finds that, under the Xcel Plan terms, Brennan is not entitled to credit for her NMC service, and she has thus failed to state a claim upon which relief can be granted. The Court will therefore grant Defendant's Motion and dismiss this action.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 8] is **GRANTED.**

2. This action is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 17, 2021          _____
at Minneapolis, Minnesota.              JOHN R. TUNHEIM
                                          Chief Judge
                                United States District Court